IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.                                                           No. 1:19-cv-01094-JDB-jay

ROGER A. HOPSON, *et al.*,

    Defendants.

___

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANTS ROGER A. HOPSON, CYNTHIA HOPSON, AND ANGELA HOPSON
___

*INTRODUCTION AND BACKGROUND*

    The Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm"), has brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* (the "Act") and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration of its rights and obligations under an auto insurance policy (the "Policy") issued to Defendants Roger and Cynthia Hopson. Plaintiff asserts there is no coverage under the Policy with respect to a rental vehicle which was the subject of a lawsuit brought in the Circuit Court of Madison County, Tennessee, by Defendant Noah W. Thomas, Docket Number C-18-271. (Docket Entry ("D.E.") 1.)

    In the underlying suit, filed in November 2018, Thomas alleged that he was driving a Ford pickup on Highway 412 in Madison County on the morning of December 19, 2017, when he was struck from behind by a Nissan Maxima traveling at a high rate of speed. As a result of the impact, the pickup rolled over several times and he was ejected from the vehicle, landing in the middle of the roadway. In his negligence action against the Hopsons' adult daughter, Defendant Angela Hopson, the driver of the Maxima, he sought $750,000 in compensatory damages. (D.E. 1-2.) Ms.

1

Hopson sought a defense and indemnity in the state court suit under the Policy, which was issued by State Farm in October 2017 insuring her parents' 2004 Toyota Tundra. This declaratory judgment action, filed May 15, 2019, ensued.

State Farm named as Defendants herein Roger, Cynthia, and Angela Hopson (collectively, the "Hopson Defendants"); Thomas; EAN Holdings, LLC d/b/a Enterprise Rent-A-Car ("Enterprise"); and Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). Thomas, Enterprise, and Tennessee Farmers have since agreed to abide by declaratory judgment if entered. (D.E. 50, 76.)

The Hopson Defendants have not appeared. On October 31, 2019, Plaintiff sought and, on November 6, 2019, was granted, a Clerk's entry of default as to these Defendants. (D.E. 46-47.) On November 15, 2019, State Farm moved for default judgment under Fed. R. Civ. P. 55(b). (D.E. 49.) Pursuant to an order of reference (D.E. 51), United States Magistrate Judge Jon A. York, on January 17, 2020, issued a report and recommendation, recommending that the motion be denied (D.E. 58). On January 28, 2020, State Farm filed a timely objection to the report and recommendation, requesting that the undersigned withhold action on the report until specific discovery could be taken. (D.E. 60.) The following day, this Court again referred the matter to Judge York for the purpose of reviewing and considering the additional evidence obtained through that discovery. (D.E. 61.)

Thereafter, State Farm took the depositions of Roger and Angela Hopson and, on April 24, 2020, moved for summary judgment against the Hopson Defendants pursuant to Fed. R. Civ. P. 56. (D.E. 75.) On May 8, 2020, Judge York issued an amended report and recommendation, again recommending that the motion for default judgment be denied. (D.E. 77.) As no objections were filed with respect to the amended report and recommendation, it was adopted by the undersigned

in an order entered June 5, 2020. (D.E. 80.) To date, the Hopson Defendants have failed to respond to the pending motion for summary judgment and the time for such response has expired. *See* LR 56.1(b) ("A party opposing a motion for summary judgment must file a response within 28 days after the motion is served or a responsive pleading is due, whichever is later."). Thus, the motion is ripe for decision.

## *UNDISPUTED FACTS*

Under the local rules of this district, "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). The following facts, therefore, are undisputed.

The 2017 Maxima driven by Angela Hopson on the date of the accident was rented to Roger Hopson by Enterprise, with Angela Hopson listed as an additional driver. He initially rented a Hyundai Santa Fe from the agency on October 11, 2017, for the purpose of testing a type of vehicle that was different from his Tundra pickup before he committed to the purchase of a new automobile. At the time of the Santa Fe's rental, the Tundra was neither out of service nor inoperable. Approximately thirty days after renting the Santa Fe, he returned it to Enterprise at its request and was provided with the Maxima. There was no gap in time between his possession of the Santa Fe and the Maxima. Mr. Hopson continued to periodically drive the Tundra between the date he rented the Santa Fe and the date of the accident.

## *THE POLICY*

A certified copy of the Policy is attached as an exhibit to the Plaintiff's complaint. (D.E. 1-1.) It provides liability coverage for the ownership, maintenance, or use of the named insured's car, a newly acquired car, or a trailer, and for the maintenance or use of a non-owned car or a

temporary substitute car. (*Id.* at PageID 26.) The named insured's car, referred to as "your" car in the Policy, is the vehicle identified on the declarations page as the 2004 Toyota Tundra pickup. (*Id.* at PageID 9, 26.) A "newly acquired car" is one "newly owned by" the named insured or a resident relative. (*Id.* at PageID 13.) A vehicle "owned by" the named insured includes one "owned by," "registered to," or "leased, if the lease is written for a period of 31 or more consecutive days." (*Id.* at PageID 25.) A vehicle "ceases to be a newly acquired car on the earlier of" (1) "the effective date and time of a policy, including any binder, issued by [State Farm] or any other company that describes the car as an insured vehicle" or "the end of the 14th calendar day immediately following the date the car is delivered to [the named insured]." (*Id.* at PageID 13 (emphasis omitted).) The term "trailer" applies only to those "designed to be pulled by a private passenger car, [] not designed to carry persons, and [] while not used as premises for office, store, or display purposes." (*Id.* at PageID 26 (emphasis omitted).) The term further includes "a farm implement or farm wagon while being pulled on public roads by a car." (*Id.* (emphasis omitted).)

    The Policy defines a "non-owned car" as

a car that is in the lawful possession of [the named insured] or any resident relative and that neither

1.     is owned by

    a.     [the named insured],

    b.     any resident relative,

    c.     any other person who resides primarily in [the named insured's] household, or

    d.     an employer of any person described in a, b, or c above, nor

2.     has been operated by, rented by, or in the possession of

    a.     [the named insured] or

> b.  any resident relative
>
> during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or loss.

(*Id.* at PageID 25 (emphasis omitted).) A "temporary substitute car" "is in the lawful possession of the person operating it and . . . replaces [the named insured's] car for a short time while [his] car is out of use due to its . . . breakdown, . . . repair, . . . servicing, . . . damage, or . . . theft," and is neither owned nor registered to the named insured or the driver. (*Id.* at PageID 26 (emphasis omitted).) A vehicle can be properly both a "non-owned car" and a "temporary substitute car" under the Policy. (*Id.*) Under such a circumstance, the automobile will be considered only as a "temporary substitute car" for Policy purposes. (*Id.*)

## *LEGAL FRAMEWORK*

Jurisdiction.

The Court first determines whether it has subject matter jurisdiction. The Act provides in pertinent part that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). It "create[s] a remedy for a preexisting right enforceable in federal court" but "does not provide an independent basis for federal subject matter jurisdiction." *Mich. Corrs. Org. v. Mich. Dep't of Corrs.*, 774 F.3d 895, 902 (6th Cir. 2014) (citing *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007)) (internal quotation marks omitted). Such independent basis for jurisdiction in this Court lies in 28 U.S.C. § 1332, which bestows original jurisdiction in the district courts over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a). The Plaintiff is an Illinois corporation with its principal place of business in Bloomington, Illinois. Thomas and the Hopson Defendants are citizens of Tennessee; Enterprise is a limited liability company formed in Delaware; and Tennessee

5

Farmers is a Tennessee corporation with its principal place of business in Tennessee. State Farm alleges that the amount in controversy exceeds $75,000. Thus, the requirements for diversity jurisdiction under § 1332 are satisfied.

Courts in this circuit consider five factors, named after the circuit's 1984 decision in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), in determining whether exercise of the Act's jurisdiction is warranted:

> (1) [w]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk*, 746 F.2d at 326) (alterations and internal quotation marks omitted), *reh'g en banc denied* (Oct. 30, 2019). The fourth factor has been divided into three sub-factors:

> (1) [w]hether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008)) (alterations omitted).

At their essence, the *Grand Trunk* factors focus on "efficiency, fairness, and federalism." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). "Although the above formulation indicates the court should balance the five factors, [the Sixth Circuit has] never indicated the

relative weights of the factors." *Cole's Place*, 936 F.3d at 396 (citing *Flowers*, 513 F.3d at 563) (internal quotation marks omitted). Rather, "the relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Id.* (quoting *Hoey*, 773 F.3d at 759) (brackets omitted). Before analyzing the factors, it appears to the Court that none of the parties have objected to the use of a declaratory judgment action here. While that fact is relevant, it is not determinative. *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1035-36 (E.D. Tenn. 2017).

The first two factors are subject to substantial overlap, "[b]ecause it is almost always the case that if a declaratory judgment will settle the controversy, it will clarify the legal relations in issue." *Cole's Place*, 936 F.3d at 397 (citing *Flowers*, 513 F.3d at 557) (ellipses and internal quotation marks omitted). In *Cole's Place*, the appellate court observed that this circuit's "most recent decisions have held that district courts did not abuse their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity." *Id.* Such is the case here. Moreover, the fact that State Farm joined the state court plaintiff in its federal declaratory judgment action militates in favor of the satisfaction of these two *Grand Trunk* factors, as the Court's determination would bind all parties potentially financially affected. *See id.* at 397-98.

The third factor does not weigh against the exercise of jurisdiction. As the *Cole's Place* court explained, "[b]ecause the inquiry focuses on whether the declaratory plaintiff has filed in an attempt to get its choice of forum by filing first, [courts] generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court." *Id.* at 399 (internal quotation marks omitted). Here, State Farm brought this action after the state court suit was initiated and there is no evidence of any improper motive. *See*

7

*Flowers*, 513 F.3d at 559 ("Absent some indication of an improper motive in the record, this third factor does not point toward denying jurisdiction.").

As to the fourth consideration, where the insurer is not a party to the state court action and the claims therein sound in negligence rather than on the scope of any insurance coverage, principles of comity are not offended. *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 454 (6th Cir. 2003); *U.S. Specialty Ins. Co. v. Payne*, 387 F. Supp. 3d 853, 860 (E.D. Tenn. 2017). The issues raised in this case are governed by state, not federal, law. Nonetheless, this Court is competent to determine whether Plaintiff is obligated to indemnify and/or defend Ms. Hopson, and there is nothing to suggest that any law or policy of the State of Tennessee would be frustrated by this Court's exercise of jurisdiction over the instant matter. *See Payne*, 387 F. Supp. 3d at 860-61. Accordingly, this factor cuts in favor of jurisdiction. *See id.*

Finally, even assuming State Farm could have brought a declaratory action in state court or intervened in the underlying action, either may not have provided a better or more effective alternative remedy. An insurer is free to choose "for reasons of its own to have its dispute settled in federal court rather than state court." *Northland*, 327 F.3d at 454.

For the reasons outlined above, the Court finds that its exercise of jurisdiction in this case satisfies the concerns of efficiency, fairness, and federalism embodied in the *Grand Trunk* factors.

Choice of Law.

In a case before the district court on diversity jurisdiction, the choice of law principles of the forum state -- here, Tennessee -- are to be applied. *See Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017), *reh'g denied* (Nov. 30, 2017). "Under Tennessee choice of law rules, courts typically apply the law of the jurisdiction provided for in the choice of law provision of the contract, unless that jurisdiction's law is repugnant to a fundamental policy

of a state having a materially greater interest and whose law would otherwise govern." *Mountain Laurel Assurance Co. v. Wortham*, No. 2:17-cv-02660-TLP-tmp, 2018 WL 5269829, at *3 (W.D. Tenn. Oct. 23, 2018) (citing *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014)) (brackets and internal quotation marks omitted).  In this case, the Policy's choice of law clause provides that Tennessee law applies to interpretation of contract provisions and the Policy was issued to a Tennessee resident under Tennessee law.  In its motion for summary judgment, State Farm cites to only Tennessee law.  Therefore, the Court will apply the law of the forum to the issues before it.

Summary Judgment Standard.

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must demonstrate the basis for its motion and identify those portions of the record which it believes demonstrate that no genuine issue of material fact exists and that it is entitled to judgment in its favor. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party must then come forth with specific facts showing a genuine issue for trial. *Id.* at 628 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). At that point, the court is to "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted).  In doing so, the court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Even where the non-movant has completely failed to respond to a motion for summary judgment, the

movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 534-35 (6th Cir. 2018).

## *DISCUSSION*

In Tennessee, "the duty to defend and the duty to indemnify are distinct." *Norfolk S.*, 278 F. Supp. 3d at 1041 (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)). The duty to defend, which is broader than the duty to indemnify, "is triggered by the 'pleadings test,' which requires a duty to defend if a complaint pleads facts that fall within a policy's coverage." *Id.* (citing *Torpoco*, 879 S.W.2d at 835). The duty to indemnify comes into play "only after a fact finder determines the 'true facts' and these facts are within a policy's coverage." *Id.* (citing *Torpoco*, 879 S.W.2d at 835). Typically, an insurer "does not have a duty to indemnify the insured if it does not also have a duty to defend that party." *Wortham*, 2018 WL 5269829, at *4.

Under Tennessee law, the issue of "the extent of insurance coverage is a question of law involving the interpretation of contractual language." *For Senior Help, LLC v. Westchester Fire Ins. Co.*, 451 F. Supp. 3d 837, 844 (M.D. Tenn. Mar. 31, 2020) (quoting *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012)). "Insurance policies in Tennessee, like other contracts, are enforced according to their plain terms, and the language used must be taken and understood in its plain, ordinary and popular sense." *Hous. Enter. Ins. Co., Inc. v. S. Ridge Hous., LLC*, 798 F. App'x 905, 908 (6th Cir. 2020) (quoting *Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 200 (Tenn. 2000)) (internal quotation marks omitted). "Because insurance contracts are drafted by the insurer, . . . courts in Tennessee construe any ambiguities in such contracts in favor of the insured." *Id.* However, "[u]nambiguous language is given its explicit effect without favoring of either party in its construction." *Norfolk S.*, 278 F. Supp. 3d at 1038 (citing *Setters v. Permanent Gen.*

*Assurance Corp.*, 937 S.W.2d 950, 954 (Tenn. Ct. App. 1996)) (brackets and internal quotation marks omitted).  "[C]ourts may not rewrite an insurance policy because the court dislikes its terms or because its provisions have harsh results." *Imperial Park, LLC v. Penn-Star Ins. Co.*, 133 F. Supp. 3d 1003, 1026 (M.D. Tenn. 2015) (citing *Black v. Aetna Ins. Co.*, 909 S.W.2d 1 (Tenn. Ct. App. 1995)).

Here, for the Policy to provide coverage for the acts of Angela Hopson as alleged in the underlying complaint, the Maxima must have been the named insured's vehicle, a trailer, a newly acquired car, a non-owned car, or a temporary substitute car as those terms are defined under the Policy.  These terms are unambiguous.  The uncontroverted facts in this case reveal that the Maxima fell into none of those categories.

The Policy did not list the Maxima on the declarations page and, therefore, it could not be considered the named insured's vehicle.  It was clearly not a trailer.  It was not a "newly acquired car" because it is undisputed that it was not a described vehicle under the Policy (as was the Tundra) and that, as delivery of a vehicle under the Enterprise rental agreement occurred on October 11, 2017, the rented automobile pursuant to that agreement would have ceased to be a "newly acquired car" for Policy purposes after October 25, 2017, the fourteenth calendar day after such delivery.  Nor was it a "non-owned car," as it is undisputed that the Maxima was being operated, rented. and possessed by Mr. Hopson during the thirty-one days preceding the date of the accident.  Finally, the Maxima would have qualified as a "temporary substitute car" and, therefore, have been a covered vehicle for purposes of the Policy, if it replaced Mr. Hopson's Tundra while that vehicle was "out of use" due to "breakdown, repair, servicing, damage, or theft." (D.E. 1-1 at PageID 19.)   In his deposition, Roger Hopson stated that he had developed lymphedema in one of his legs as a result of radiation therapy for prostate cancer.  The condition

caused swelling, which made it difficult for him to get in and out of the Tundra pickup. He explained that the reason for renting a vehicle was that he wanted to find something into which he could more easily maneuver. He further testified that, at all times during his rental of the Santa Fe and then the Maxima, the Tundra was still operational, although he used it rarely for hauling trash and similar activities that required a pickup-type vehicle.

The allegations in the underlying state action, for negligence on behalf of Angela Hopson while she was driving the Maxima and liability for injuries resulting from the accident, do not fall under the Policy's coverage. There is no dispute as to this fact. Thus, State Farm had no duty to defend her in that action. *See Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) ("the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery"); *see also Wortham*, 2018 WL 5269829, at *5 (where there was no dispute that the allegations of negligence and personal injury arising from an auto accident in the underlying complaint did not fall within the coverage of the insurance policy at issue, insurer had no duty to defend). Moreover, the "true facts," which are undisputed, establish that the Maxima did not fall under any of the Policy definitions for which coverage was provided and, therefore, Plaintiff had no duty to indemnify Angela Hopson in the underlying suit.

Accordingly, as State Farm has carried its burden of demonstrating the absence of a genuine issue of material fact in this matter, its motion for summary judgment is GRANTED. The Court hereby DECLARES that State Farm has no duty to defend or indemnify Angela Hopson in the lawsuit filed in the Circuit Court of Madison County, Tennessee, by Noah W. Thomas, Docket Number C-18-271.

IT IS SO ORDERED this 8th day of October 2020.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE